J-S14007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RALPH A. ESPINOSA | : | |
| | : | |
| Appellant | : | No. 1433 EDA 2017 |
| | : | |

Appeal from the Judgment of Sentence January 4, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0009956-2014

BEFORE:   OTT, J., McLAUGHLIN, J., and RANSOM[*], J.

MEMORANDUM BY OTT, J.:                          **FILED MAY 15, 2018**

Ralph A. Espinosa appeals from the judgment of sentence imposed January 4, 2017, in the Philadelphia County Court of Common Pleas. The trial court sentenced Espinosa to an aggregate term of 21 to 42 years' imprisonment following his plea of *nolo contendere* to charges of rape of a child, involuntary deviate sexual intercourse ("IDSI") with a child, unlawful contact with a minor, and sexual abuse of children (videotaping sexual acts),[1] after he videotaped himself sexually abusing his four-year old niece.  On appeal, he challenges only the discretionary aspects of his sentence.  For the reasons below, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***See*** 18 Pa.C.S. §§ 3121(c), 3123(b), 6318(a)(1), and 6312(b)(1), respectively.

The facts underlying Espinosa's *nolo contendere* plea were summarized by the trial court as follows:

> [Espinosa's] sexual assault on his four year old niece, M.G., was recorded on his cell phone video. At the time of the incident [] eighteen year old [Espinosa] was living with M.G. and her family. The eight (8) minutes, forty-four (44) second video showing the vaginal and anal rape of M.G. was discovered by her stepfather when he borrowed [Espinosa's] phone. M.G.'s mother was immediately notified and police were called. M.G. told her mother that "her coo-coo (vagina) hurt and her Uncle Ralph ([Espinosa]) put something inside of it." According to M.G. [Espinosa] was "the monster [that] left me last Saturday night."
>
> The child gave further details about the sexual assault when interviewed at Philadelphia Children's Alliance. D.N.A. swabs were taken from M.G. and [Espinosa] resulting in a vaginal D.N.A. match, but inconclusive as to the anal swab. [Espinosa] made a statement that he was high at the time of the incident and didn't remember anything. When confronted with the video showing the sexual assault [Espinosa] identified his body parts as those of the male assaulting M.G., including his penis.

Trial Court Opinion, 10/30/2017, at unnumbered 2 (record citations omitted).

Espinosa was arrested and charged with 15 offenses. On July 11, 2016, he entered an open plea of *nolo contendere* to the aforementioned four charges in exchange for which the Commonwealth *nol prossed* the remaining counts. On January 4, 2017, the trial court sentenced Espinosa to a term of 10 to 20 years' imprisonment for rape of a child, 10 to 20 years' for IDSI, six to 12 years' for unlawful contact with a minor, and five to 10 years' for sexual abuse of children.[2] The court directed that all of the sentences run

---

[2] Before the hearing, Espinosa was found not to be a sexually violent predator under the Sexual Offenders Notification and Registration Act ("SORNA"). ***See***

consecutively. On January 10, 2017, Espinosa filed a motion seeking reconsideration of his sentence, which the court denied following a hearing on April 13, 2017. This timely appeal followed.[3]

Espinosa's sole issue on appeal is a challenge to the discretionary aspects of his sentence. When considering such a claim, we must bear in mind:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (quotation omitted), *appeal denied*, 125 A.3d 1198 (Pa. 2015). Furthermore, it is well-settled that:

> [a] challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. Prior to reaching the merits of a discretionary sentencing issue:

---

42 Pa.C.S. §§ 9799.10-9799.41. Therefore, we need not remand in light of the recent decisions of the Pennsylvania Supreme Court *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), *cert. denied*, 138 S.Ct. 925 (2018), and this Court in *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017). *See Muniz*, *supra* (holding that SORNA's registration provisions constitute punishment, and, therefore, the retroactive application of those provisions violates the *ex post facto* clauses of the federal and Pennsylvania constitutions); *Butler*, *supra*, 173 A.3d at 1218 (after *Muniz*, "trial courts cannot designate convicted defendants SVPs[,] nor may they hold SVP hearings[,] until our General Assembly enacts a constitutional designation mechanism.").

[3] On September 27, 2017, the trial court directed Espinosa to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Espinosa complied with the court's directive, and filed a concise statement on October 16, 2017.

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Grays**, 167 A.3d 793, 815–816 (Pa. Super. 2017) (some citations omitted), *appeal denied*, 178 A.3d 106 (Pa. 2018).

In the present case, Espinosa complied with the procedural requirements for this appeal by filing a timely post-sentence motion for modification of sentence and subsequent notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to **Commonwealth v. Tuladziecki**, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f). Therefore, we must determine whether he has raised a substantial question justifying our review.

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." **Commonwealth v. Ventura**, 975 A.2d 1128, 1133 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted). Here, Espinosa argues the sentence imposed by the trial court, although within the sentencing guidelines range, was "manifestly excessive and unreasonable because the sentencing court only considered the

seriousness of the crime," and failed to take into consideration mitigating factors including his young age, lack of a criminal record, and expression of remorse.[4]  Espinosa's Brief at 11-12.  Further, he insists the court failed to consider the relevant sentencing criteria outlined 42 Pa.C.S. § 9721.  **See id.** at 12.  Moreover, Espinosa maintains the trial court's comments during the sentencing hearing evidenced a bias and prejudice against him.  **See id.** at 15.

"[A]n averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question." **Commonwealth v. Bricker**, 41 A.3d 872, 875 (2012), *quoting* **Commonwealth v. Macias**, 968 A.2d 773, 776 (Pa. Super. 2009). Moreover, although a claim the court failed to consider mitigating factors does not generally present a substantial question,[5] an "excessive sentence claim[ ] in conjunction with an assertion that the court did not consider mitigating factors[,]" does present a substantial question for our review. **Commonwealth v. Gonzalez**, 109 A.3d 711, 731 (Pa. Super. 2015), *appeal*

_____

[4] To the extent Espinosa contends the trial court failed to adequately consider the sentencing factors listed in 42 Pa.C.S. § 9721(b), and in particular, his rehabilitative needs, we note that he did not raise this claim during the sentencing hearing, in his written post-sentence motion, or during argument on his post-sentence motion.  **See** N.T., 1/4/2017; Post Sentence Motion, 1/10/2017; N.T., 4/13/2017.  Accordingly, it is waived on appeal. **See Grays**, **supra**.

[5] **Commonwealth v. Corley**, 31 A.3d 293, 297 (Pa. Super. 2011).

*denied*, 125 A.3d 1198 (Pa. 2015), *quoting **Commonwealth v. Dodge***, 77 A.3d 1263, 1272 (Pa. Super. 2013) (*en banc*), *appeal denied*, 91 A.3d 161 (Pa. 2014). Similarly, this Court has held that "an allegation of bias in sentencing implicates the fundamental norms underlying sentencing and hence, … raises a substantial question." ***Commonwealth v. Corley***, 31 A.3d 293, 297 (Pa. Super. 2011). Accordingly, we may proceed to an examination of Espinosa's argument on appeal.

Espinosa concedes the sentence imposed by the trial court fell within the standard range of the sentencing guidelines. ***See*** Espinosa's Brief at 11 n.1. Therefore, we may only vacate the sentence if we find "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S. § 9781(c)(2).

In the present case, the trial court had the opportunity to review both a pre-sentence investigation report, and a SORNA evaluation, which concluded Espinosa did not meet the criteria for classification as a sexually violent predator. ***See*** N.T., 1/4/2017, at 4, 56. Furthermore, the court heard testimony from the mother, grandmother, and aunt of the victim,[6] two additional character witnesses for the defense, and Espinosa himself. Thereafter, the trial court offered the following explanation for the sentence imposed:

---

[6] The grandmother and aunt of the victim were called as character witnesses for Espinosa. ***See*** N.T., 1/4/2017, at 26, 33.

- 6 -

All of these cases are just so sad, what it does to the families. And what amazed me each time is the duality of the defendant. On the one hand we have the family talking about this loving individual who was raised to love people and animals and who was the favorite student in school, beloved brother, son, and he couldn't possible have done this. But then there's the monster that visits a four-year-old child and turns her world and her childhood upsidedown, the monster who sexually assaults her. But the audacity in this case is taken to a different, another level. He's actually videotaping it, further taking away that child's dignity. You videotape it for a prolonged period of time.

And that's one of the saving graces in this case, that you did not put that child through a trial, where other people had to see that video, jurors, the Court. So that is one of the saving graces we have, that the victimization stopped with those in law enforcement who had to endure that, the child's mother who had to endure seeing her beloved child raped by her brother.

But by the same token, you hide behind the cloak of PCP induced high or marijuana cigarette induced high where you claim you can't remember. But, again, the videotaping kind of takes away from that. Because that's calculated. Who does that? Who does that? And the lubricant. So this was in your heart and mind. And that sweet little child that came in here this morning, the innocence, the vulnerability, the trust that she must have had in you.

And what makes it even worse is what it's done to this family. There's no reason for there to be sides. They can come visit you and be supportive, but they can also be supportive of that child and her mother. It's a disgrace, a disgrace, that this family has allowed this to happen to this child and that child's mother, who is part of you. And I would hope and pray that from here on out you do something to mend that. Again, as I said earlier, it's by stopping with the denial. Because he did this. And you need to accept that, and you need to move on from that and try to heal and be supportive of that child who is six years old.

Now I don't know what's going on in terms of what her memory of it is or how it's impacted her, although her mother has indicated that there's some behavior issues at this point. But she has to live with this for the rest of her life. So you need to be there for her, period. Acknowledge that this has happened and help her heal.

It also amazes me that the mother in this situation can be forgiving. I don't know if I could do that. I see her there, she's torn apart, because she's a part of you, this family. She loves her brother, the monster who visited her child, and is forgiving of him. So this is just truly such a sad situation, that for nine minutes, almost, that we cannot replay or take away or heal, that your actions caused all of this.

So the sentence of the Court—and I'm taking into account all of the reports, the presentence, the psychiatric, the Megan's [Law] report, the testimony of both sides, the fact that you did spare the child a trial in this matter, things that went on in your background, your issues.

N.T., 1/4/2017, at 53-56.

As noted above, Espinosa contends the court imposed an excessive sentence based solely on the gravity of the offense, and absent sufficient consideration of mitigating factors, such as his age and lack of criminal history. He insists a court must impose a sentence "based on the **minimum** amount of confinement" consistent with the sentencing criteria set forth in 42 Pa.C.S. § 9721(b), namely "the gravity of the offense, the need of the public for protection and the rehabilitative needs of the defendant." Espinosa's Brief at 18 (emphasis supplied). Espinosa emphasizes the trial court failed to account for the fact that he has family support, was "barely an adult" at the time of the crime, and was "under the influence of PCP." *Id.* at 20. Relying on **Commonwealth v. Simpson**, 510 A.2d 760 (Pa. Super. 1986), *appeal denied*, 522 A.2d 49 (a, 1987), and 522 A.2d 1105 (Pa. 1987), he maintains his cumulative minimum sentence was objectionable because it "robs him of most of his young adulthood." *Id.* at 24. Further, he states that although he was not a juvenile when he committed the crime, "the same concerns

expressed about lengthy incarceration of juvenile offenders [in ***Miller v. Alabama***, 567 U.S. 460 (2012),] apply" herein. ***Id.*** at 25. Moreover, Espinosa insists the trial court displayed bias and ill-will toward him when it referred to him as a "monster." ***See id.*** at 29-30.

Preliminarily, we note Espinosa's insistence that the court must impose the "minimum" term of confinement consistent with the Section 9721(b) factors is simply incorrect. While a prior version of the Sentencing Code did include the language Espinosa proposes, our Supreme Court has made clear that "under the current Sentencing Code there is no requirement that a sentencing court's imposition of sentence must be the minimum possible confinement[.]" ***Commonwealth v. Walls***, 926 A.2d 957, 965 (Pa. 2007).

Nor do we agree with Espinosa's assertion that the United States Supreme Court's decision in ***Miller*** mandates a shorter sentence. The ***Miller*** Court held "**mandatory life without parole** for those **under the age of 18 at the time of their crimes** violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" ***Miller***, 132 S.Ct. at 2460 (emphasis supplied). Here, Espinosa was 18 years old at the time he sexually assaulted his niece; he was not convicted of murder, and **not** sentenced to a term of life imprisonment without the possibility of parole. Accordingly, the ***Miller*** case is simply inapplicable to the facts of this case. Although Espinosa refers to the language in ***Miller*** which states that juveniles have underdeveloped brains, he fails to acknowledge the ***Miller*** Court did not foreclose a trial court's

ability to impose a life sentence upon a juvenile convicted of murder; rather, it imposed a requirement upon the trial court to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." **Miller**, **supra**, 132 S.Ct. at 2469.

Our review of the record, the parties' briefs, and the relevant statutory and case law reveals no abuse of discretion on the part of the trial court. Here, the court had the benefit of both a presentence investigation report, and a SORNA evaluation. "Where the sentencing court had the benefit of a presentence investigation report [], we can assume the sentencing court 'was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.'" **Commonwealth v. Moury**, 992 A.2d 162, 171 (Pa. Super. 2010) (quotation omitted). Although Espinosa claimed he was under the influence of drugs at the time of the crime, the court doubted the credibility of his account based upon the fact he had the wherewithal to apply a lubricant to the victim[7] before videotaping the assault. Moreover, while the trial court declined to view the video of the incident, so as not to "further victimize" the child,[8] it considered the testimony of the investigating officer who described the incident as

_____

[7] **See** N.T., 1/4/2017, at 16-17 (Commonwealth attorney describing that video showed Espinosa "rub[bing] some kind of lotion or lubricant on this little girl before he penetrates her").

[8] **Id.** at 21.

"probably the worst thing I've ever seen in my career." N.T., 1/4/2017, at 10. The officer explained the video "shows a cute four-year-old crying in the background as the defendant continues [raping her], and he's hushing her, and he's telling her, I'm almost there." *Id.* Under these circumstances, we cannot conclude the court's imposition of consecutive standard range sentences constituted an abuse of discretion.

We also find Espinosa's reliance on this Court's decision in *Simpson*, *supra*, misplaced. In that case, the defendant was convicted of participating in six robberies of two appliance stores over a five-month period. *See Simpson*, *supra*, 510 A.2d at 761. The trial court sentenced him to an aggregate term of 30 to 60 years' imprisonment, despite the fact that the defendant had a "virtually nonviolent, unremarkable background," was a high school graduate and was honorably discharged after serving six years in the military. *See id.* at 762. On appeal, a panel of this Court found the cumulative sentence imposed was excessive. Indeed, after referencing case law which called for the "minimum amount of confinement" consistent with the Section 9721(b) factors,[9] the panel stated:

> This case is one where the benefits of a good prior history and the effects of aging on criminal involvement make the appellant a reasonable candidate for a sentence which will punish him, serve the needs of society for protection and make note of the serious nature of the acts, but also permit the appellant, in a reasonable

---

[9] *Simpson*, *supra*, 510 A.2d at 762.

> period of time, to return to society and, if need be, under long-term parole supervision, pick up a meaningful and productive life.
>
> To impose a minimum sentence of thirty years discounts the possibility of rehabilatation and effectively removes appellant from society for his potential working life, precluding the possibility of his ever becoming a contributing member of society.

*Id.* at 764.

Espinosa argues his case "presents the same concerns that were addressed by the ***Simpson*** Court" because his lengthy term of incarceration "forecloses any possibility he could have an ordinary life[.]" Espinosa's Brief at 23-24. We reject his claim for several reasons. First, as noted above, the ***Simpson*** Court relied, at least in part, on the now-irrelevant language calling for imposition of the minimum sentence necessary to serve the objective of the Sentencing Code. Second, Espinosa's history does not include the "productive lifestyle" which Simpson led prior to his "rather late in [] life" crime spree." ***Simpson***, ***supra***, 510 A.2d at 763. Lastly, while the crimes of which Simpson was convicted were serious, they are not as troubling as Espinosa's videotaped anal and vaginal rape of his four-year-old niece. Therefore, we find ***Simpson*** is not controlling.

Lastly, with respect to Espinosa's claim that the trial court demonstrated bias against him, the court maintains its comment was taken out of context. The court opined:

> The Court's use of the term "monster" referred to the descriptive term used by the four (4) year old victim as she described the sexual assault inflicted on her by her uncle. In that context it was

a[n] appropriate depiction of what, through the child's eyes, [the victim] endured.

Trial Court Opinion, 10/30/2017, at unnumbered 4. Indeed, the prosecutor stated during the sentencing hearing that, during a forensic interview, the victim referred to her uncle as "a monster who came into her bedroom at night." *See* N.T., 1/4/2017, at 15. Accordingly, the trial court's use of the term was simply a reference to the victim's description. The court used the term to juxtapose the victim's description of Espinosa with the gentle, loving, young man described by the defense witnesses. We find no evidence of bias. *Compare Commonwealth v. Williams*, 69 A.3d 735, 745-749 (Pa. Super. 2013) (vacating sentence imposed by trial judge upon revocation of probation based on "overwhelming appearance of bias" when judge repeatedly (a) implied original judge imposed too lenient a sentence, (b) insinuated burglary defendant "held a particular animus towards the Catholic Church" because she targeted those congregations more frequently than other organizations; (c) described defendant as a "pathological liar;" and (d) subjectively compared defendant to other female defendants he had sentenced, describing her as "the most violent, thuggish female who has appeared before me"), *appeal denied*, 83 A.3d 415 (Pa. 2014); *Commonwealth v. Spencer*, 496 A.2d 1156 (Pa. Super. 1985) (vacating sentence when trial court demonstrated bias against 16-year-old defendant by stating it had been "waiting" for the day it could sentence the defendant, describing him as an "animal," and calling him "Punk" and "Chief").

Accordingly, because we detect no abuse of discretion on the part of the trial court, and do not find application of the sentencing guidelines was "clearly unreasonable" under the facts of this case,[10] we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/18

---

[10] 42 Pa.C.S. § 9781(c)(2).