J-S09027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DIONA NICHOLS | : | |
| | : | |
| Appellant | : | No. 1922 EDA 2021 |

Appeal from the Judgment of Sentence Entered August 13, 2021,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0002586-2018.

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JUNE 3, 2022**

Diona Nichols appeals the judgment of sentence imposed after she pled guilty to murder in the third degree, endangering the welfare of a child ("EWOC"), corrupting the morals of a minor ("CMOM"), possession of an instrument of a crime ("PIC"), tampering with or fabricating physical evidence, and abuse of a corpse.[1]  After careful review, we affirm.

The following facts are from the trial court's opinion and the plea colloquy.  Nichols lived with a man she called her stepfather, her young daughter, and the decedent, Anthony Ransom.  According to Nichols, Ransom had been living with her for some time while he was recovering from an

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c), 4304(a)(1), 6301(a)(1)(i), 907(a), 4910(1), and 5510.

abusive relationship with an older man. Nichols also believed that Ransom was prostituting himself and tried to dissuade him from his homosexuality.

On February 18, 2018, Nichols arrived home around 2:30 a.m. after spending the night out and found the garage door open. Upon entering the residence, she saw Ransom taking a shower in the basement. Nichols then grabbed a blunt instrument and proceeded to attack Ransom, smashing the glass shower in the process. Ransom, bleeding, ran upstairs into the living room, where Nichols attacked him with a variety of other weapons, including a broken golf club, a baseball bat, a curtain rod, and a knife.

At approximately 5:00 a.m., Nichols was seen on a nearby surveillance camera dragging Ransom's naked body outside of her house and leaving him on the sidewalk. She went back inside and came out a few minutes later, carrying her daughter, and kicked Ransom's body. Nichols then walked to her car, parked nearby, and moved it to her parking spot. While walking back to the house, she stopped to pick up one of her shoes and turned over Ransom's body before going inside. At that point, it was unclear where her daughter was. About two hours later, a pedestrian saw the body and alerted the police.

According to the medical examiner, Ransom sustained numerous facial and skull fractures, a fractured rib, brain bruising, massive contusions over his entire body, and over 60 distinct lacerations. He also suffered several stab wounds to his head, chest, and extremities. The medical examiner also found piercing injuries around Ransom's rectum and perineum consistent with sodomization by objects.

After the police investigated the scene and interview Nichols, they arrested her. Nichols was charged with multiple offenses, including first degree murder.

On January 24, 2020, Nichols pled guilty to third degree murder, CMOM, EWOC, PIC, abuse of a corpse, and tampering with evidence. The trial court sentenced Nichols to 20 to 40 years' imprisonment for the murder charge, two and a half to five years' imprisonment for EWOC, and two and a half to five years' imprisonment for CMOM, to be served consecutively, followed by concurrent sentences of probation for the remaining charges. Nichols filed a post-sentence motion, which the court denied.

Nichols filed this timely appeal. Nichols and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Nichols raises a single issue:

> Did the sentencing court commit an abuse of discretion by denying [Nichols'] motion for reconsideration of sentence because the sentence imposed was excessive under the circumstances and the honorable court did not consider or weigh the many mitigating circumstances [Nichols] presented to the court during the sentencing hearing [. . .] before deciding upon a sentence?

Nichols' Brief at 2.

Nichols challenges the discretionary aspects of her sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). This Court has explained that, to reach the merits of

a discretionary sentencing issue, we must conduct a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved [the] issue; (3) whether [a]pellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

**Commonwealth v. Colon**, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting **Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa. Super. 2013)).

Nichols has satisfied the first three requirements in **Colon**. Accordingly, we must determine whether Nichols has raised a substantial question.

In her Rule 2119(f) statement of reasons why she should be allowed to appeal the discretionary aspects of her sentence, Nichols claims that the trial court abused its discretion by imposing a manifestly excessive sentence resulting from the imposition of consecutive sentences and failure to consider multiple mitigating circumstances, particularly her rehabilitative needs. According to Nichols, the court only considered the seriousness of the crime and disregarded her individualized circumstances resulting in too severe punishment for the underlying conduct which was tantamount to a life sentence. Nichols' Brief at 11.

A substantial question exists when "the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the

fundamental norms which underlie the sentencing process." ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa. Super. 2011) (internal citations omitted). The existence of a substantial question must be determined on a case-by-case basis. ***Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 545 (Pa. Super. 1995). Regarding the imposition of consecutive sentences and whether a substantial question has been raised, this Court has held:

> A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. ***Commonwealth v. Mastromarino***, 2 A.3d 581, 587 (Pa. Super. 2010)[.] Rather, the imposition of consecutive rather than concurrent sentences will present a substantial question in only "the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." ***Commonwealth v. Lamonda***, 52 A.3d 365, 372 (Pa. Super. 2012)[(en banc)].
>
> [An appellant] may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

***Commonwealth v. Swope***, 123 A.3d 333, 338-39 (Pa. Super. 2015) (quotations and citations omitted).

Furthermore, "ordinarily, a claim that the sentencing court failed to consider or accord proper weight to a specific sentencing factor *does not* raise a substantial question." ***Id.*** (emphasis in original). However, this Court has held that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial

- 5 -

question." ***Commonwealth v. Caldwell***, 117 A.3d 763, 769-70 (Pa. Super. 2015) (*en banc*).

Consequently, when we view Nichols' challenge to the imposition of consecutive sentences as unduly excessive, together with her claim that the court failed to consider certain mitigating factors and her rehabilitative needs, we conclude that she presents a substantial question. Therefore, we will consider the merits of her sentencing claim.

Our standard of review of a sentencing claim is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Nichols first claims that the court abused its discretion when it sentenced her because it failed to consider the many mitigating factors and her rehabilitative needs, and instead, only focused on the seriousness of the crime. As a result, Nichols' sentence was not individualized. We disagree.

Upon review of the record, we observe that trial court received a plethora of information to consider in fashioning a sentence of confinement consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. ***See*** 42 Pa.C.S.A. §

9721(b); ***Commonwealth v. Jones***, 640 A.2d 914, 917 (Pa. Super. 1994) (noting that a trial court must balance these factors in arriving at a proper sentence). Notably, at the outset of the sentencing hearing, the trial court stated on the record:

> I have reviewed everything that's been submitted, all the reports, all the psychiatric reports, all the letters of accommodation, all the letters on both sides as well as the certificates of what has been accomplished by the defendant. The prior record score, according to the calculations, is a zero. The guidelines for murder of the third-degree, if you used the normal guidelines, its 72 to 240 [months]. If you used the deadly weapon enhancement, its 90 to 240 [months].

N.T., 8/13/21, at 5-6. In particular, the referenced reports included a pre-sentence report. While Nichols viewed the court's statement as merely perfunctory, we have stated that "where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted).

Additionally, the trial court had two mental health evaluations, one that it ordered and one provided by Nichols. The court expressly remarked that it reviewed this information. During the hearing, Nichols' counsel highlighted pertinent factors from these reports for the court. Counsel also presented Nichols' achievements since the incident, including courses she completed while incarcerated, as well as her good behavior when she was released from during the pandemic. Finally, the trial court had the opportunity to observe

Nichols on several occasions and to hear from her directly during her allocution why it should give her mercy. Critically, the court did not find her remorseful. Trial Court Opinion, 11/1/21, at 7.

From all of this, the trial court was well informed of Nichols' background and history, her character, and her mental health and rehabilitative needs. And, the court considered all of it. *Id.* at 6. Nonetheless, the court found it insufficient to overcome the gravity of the crime and the impact it had on Ransom's family, friends, and the community. Before sentencing Nichols, the court stated:

> To the family of Anthony Ransom, I can't even imagine the pain that you people are going through. My condolences. I am terribly, terribly sorry for what you are going through.
>
> Ms. Nichols, you need to thank your attorney. If this had gone to trial, I have absolutely no doubt, none, that you would have been convicted of first-degree murder and sentenced to life in jail. Only because of his actions are you not doing that.
>
> This is a brutal, cold, callous, merciless, senseless murder. The man was beaten, stabbed, mutilated[; you] used a hammer, knife, golf clubs and curtain rod, dragging his naked body and leaving him on the sidewalk as the final humiliation.

N.T., 8/13/21, at 112–13.

In essence, Nichols argues that the court should have accorded greater weight to the mitigating factors and Nichols' rehabilitative needs than it did. However, on appeal, "[w]e cannot re-weigh the sentencing factors and impose our judgment in place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009). Furthermore, although the court did

- 8 -

not specifically reference the mitigation evidence, "a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Commonwealth. v. Crump*, 995 A.2d 1280, 1283 (Pa. Super. 2010). We find that the record as a whole demonstrates this.

Nichols next claims that the trial court erred when it sentenced her because it imposed consecutive sentences which effectively amounted to a life sentence.[2] In support of this position, Nichols likens her sentence to those imposed in *Commonwealth v. Coulverson*, 34 A.3d 135 (Pa. Super. 2011), *Commonwealth v. Dodge*, 95 A.2d 1198 (Pa. Super. 2008), *Commonwealth v. Whitman*, 880 A.2d 1250 (Pa. Super. 2005) *rev'd in part*, 918 A.2d 115 (Pa. 2007), and *Commonwealth v. Simpson*, 510 A.2d 760 (Pa. Super. 1986). Nichols' Brief at 19–20. Again, we disagree.

This Court has long held that a sentencing court has broad discretion regarding whether a defendant serves sentences consecutively or concurrently. *Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014). The Sentencing Code affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. 42 Pa.C.S.A. § 9721;

---

[2] At time of sentencing, Nichols was 39 years old.

*Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005). Furthermore, Nichols is not entitled to a volume discount for her crimes. *See Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995).

Lastly, Nichols' reliance on the cited cases do not alter the outcome here as they are readily distinguishable from the instant facts. Though each of those cases involved excessive sentences vacated on appeal, the reasoning was based primarily upon the trial courts' decisions to impose multiple consecutive sentences for multiple lesser offenses.

In *Coulverson*, this Court vacated an aggregate sentence of 18 to 90 years' imprisonment after a 19-year-old pled guilty to 18 charges, consisting of maximum statutory imprisonment terms running consecutively. *Coulverson*, 34 A.3d at 135. We concluded that the trial court failed to adequately explain its decision and that the record suggested its willingness to imprison the defendant for the longest amount of time regardless of any mitigating factors. *Id.* at 148–150.

In *Dodge*, this Court determined that an aggregate sentence of 52 ½ to 111 years' imprisonment resulting from 37 consecutive sentences was unreasonable when it effectively amounted to lifetime incarceration for "non-violent offenses with limited financial impact." *Dodge*, 957 A.2d at 1202.

In *Whitman*, the trial court imposed a total sentence of 39 to 78 years of imprisonment for 13 property crimes despite the defendant's guilty plea and potential for rehabilitation. *Whitman*, 880 A.2d at 1253–54.

- 10 -

Similarly, in **Simpson**, we vacated the imposition of consecutive sentences totaling 30 to 60 years' imprisonment for multiple counts of robbery when the trial court failed to consider the defendant's potential for rehabilitation in light of his background and young age. **Simpson,** 510 A.2d at 763–64.

By contrast, Nichols' sentence was based primarily on her conviction for murder in the third degree, constituting 20 to 40 years of her 25 to 50 year term of incarceration, with the remainder of her sentence based on her convictions for endangering the welfare of a child and corruption of minors. This case is not one in which the defendant's lengthy aggregate sentence resulted from the imposition of consecutive sentences for multiple lesser crimes. Instead, Nichols was sentenced to a significant prison term for her plea to third-degree murder, an offense much more serious than those involved in the cases Nichols cites. The fact that Nichols faces decades in prison for murder is not manifestly unreasonable given her crime, even if, ultimately, she is incarcerated for most or the remainder of her life. Additionally, the trial court here did not impose sentences of incarceration for the remaining convictions.

In sum, we conclude that the trial court did not abuse its discretion in rendering Nichols' sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/3/2022